Strafford, }
March 1, 1904. }

## STANIELS *v.* WHITCHER *&* a.

A mortgage executed and delivered on the day preceding the advancement
of the loan intended to be secured thereby takes effect on the latter date,
and is not given to secure a future liability, within the meaning of section
3, chapter 139, Public Statutes.

A mortgage given to secure the payment of a specific sum to be thereafter
advanced upon the demand of the mortgagor becomes effective as the funds
are delivered, and takes precedence of subsequent incumbrances, as to ad-
vancements made prior thereto.

BILL IN EQUITY, to foreclose a mortgage given by the defendant
Whitcher to the plaintiff, dated July 30, 1897, and recorded
August 4, 1897. The condition of the mortgage is as follows:
" Nevertheless it is to be considered, and the condition of the fore-
going deed is such, that if the said Whitcher, his heirs, executors,
and administrators, shall keep said premises insured for the bene-
fit of said grantee in such sum and in such companies as he may
approve, and reasonably pay and discharge all taxes that may be
assessed on said premises, and shall well and truly pay unto the
said Staniels, his heirs and assigns, all such sums of money as
said Staniels shall advance to him under a certain agreement
entered into by and between them of even date herewith, and shall
perform all the terms and conditions of said agreement, then the
foregoing deed is to be void and of no effect; otherwise to remain
in full force and virtue."

The agreement referred to in the mortgage was executed in
duplicate by Whitcher and Staniels on July 30, 1897, and is as
follows: " Charles E. Staniels, of Concord, N. H., and George
Whitcher, of Durham, N. H., mutually agree with each other as
follows, each in consideration of the agreements of the other
herein contained: Said Staniels agrees to loan to said Whitcher
certain sums of money, not exceeding in the aggregate the sum of
two thousand dollars ($2,000), at such times as Whitcher may
indicate within the space of one year from the date hereof, and in
such amounts as Whitcher may desire; said sums of money to be
payable respectively in ten days after a demand therefor by
Whitcher and his tender to Staniels of his promissory note for the
amount demanded, payable at said Concord, on demand, to Charles
E. Staniels, with interest at six per cent annually. Said Whitcher
on his part agrees to execute and deliver to said Staniels, upon
the execution of this agreement, a good and valid second mort-
gage deed, covering three certain tracts of land situated in said

Durham and owned by him, conditioned to secure said Whitcher's performance of his agreements herein contained and the payment of such sums of money as he may receive from time to time from said Staniels under this agreement; to execute and deliver to Staniels promissory notes as herein before stipulated; to forth- with apply for, and if acceptable to the company to take out, a policy of life insurance on his own life in the Connecticut Mutual Life Insurance Company for two thousand dollars ($2,000), pay- ing the premiums thereon during the continuance of this contract, and to assign the same to said Staniels as further collateral secur- ity for said loans; to invest said money in erecting a house upon a portion of said land, and when he shall have built said house to procure a policy of insurance on the same to a reasonable amount in some reputable fire insurance company, payable in case of loss to said Staniels, mortgagee, as his interest may appear."

Under this agreement, Staniels loaned Whitcher $500 on July 31, $350 on August 25, $150 on September 1, and $1,000 on December 10, 1897. Whitcher mortgaged a part of the same property to the defendant Durgin on October 22, 1897, and another part to the defendant Jewell on January 11, 1898. Neither Jewell nor Durgin knew of the plaintiff's mortgage when theirs were taken.

There was a decree for the plaintiff, and Durgin and Jewell excepted. Transferred from the February term, 1903, of the superior court by *Young*, J.

*John S. H. Frink* and *John W. Kelley*, for the plaintiff.

*Arthur G. Whittemore, John Kivel,* and *George T. Hughes,* for the defendants.

BINGHAM, J. The agreement of July 30, 1897, gave Whitcher the right, within one year from its date, to borrow of the plaintiff an amount of money, not to exceed $2,000, in such sums as he should desire, upon ten days' notice and a tender of his demand note therefor. While he agreed to do certain things in case he called upon the plaintiff for loans under the agreement, he did not obligate himself to borrow $2,000, or any portion thereof, from him. It was left to his discretion to say whether he would bor- row any money, and if any, what amount within the limits of the plaintiff's offer. In other words, he procured an option upon the plaintiff for an amount of money not exceeding $2,000, to extend for one year; and in case he exercised it, the mortgage which he was to give was to stand as security for the payment of the sums borrowed and the performance of his other undertakings, which

were to be collateral to the loan. Therefore, until the option was exercised and a loan procured thereunder, the obligation to which it was intended the mortgage should attach as a security did not exist.

At the date of the execution and delivery of the mortgage, the option had not been exercised in whole or in part; but that fact does not render the mortgage invalid as a security, within the meaning of the statute. P. S., c. 139, s. 3. The option was exercised to the amount of $500 on the following day, at which time the mortgage is to be considered as having come into existence and to have taken effect, so far as it relates to the loan of $500. *Stavers* v. *Philbrick*, 68 N. H. 379; *Weed* v. *Barker*, 35 N. H. 386.

In *Stavers* v. *Philbrick, supra, Carpenter*, J., in considering a similar question, said: "The execution and delivery of the mortgage upon one day and the mortgagee's assumption on the next day of the liability which it was intended to secure, must be regarded as parts of the same transaction. Until the indorsement of the note by the plaintiff, the mortgage, though previously delivered, had no legal existence. It and the liability it was made to secure took effect at the same instant. The plaintiff's obligation to pay the $4,000 note was not 'made or contracted after the execution and delivery of the mortgage,' within the meaning of the statute."

The question, however, remains, whether the mortgage is void as a security for the advancements made by the plaintiff subsequent to the one for $500. It has been held that where a mortgagor has agreed to pay the mortgagee a specific sum, as represented by his note, and, in consideration therefor, the mortgagee has agreed to give the mortgagor credit for the amount of the note, or to assume a liability, the mortgage is not to secure future advancements and void within the meaning of the statute. *Stearns* v. *Bennett*, 48 N. H. 400; *Abbott* v. *Thompson*, 58 N. H. 255; *Fessenden* v. *Taft*, 65 N. H. 39.

Upon the facts disclosed in the foregoing cases, it appeared that it was not discretionary with the mortgagor whether he would pay his note, or with the mortgagee whether he would extend the credit or assume the obligation which was the consideration for the note; but the argument was advanced, that if the payment of the note or the extension of the credit had been discretionary with either party, the mortgage would have been invalid. It would seem, however, that this argument is to some extent in conflict with the results reached in *Richards* v. *Railroad*, 44 N. H. 127, and *Internat'l Trust Co.* v. *Company*, 70 N. H. 118, when applied to the facts there stated. In the last case, it appeared that in

1895, the Gas & Electric Company contemplated issuing bonds to the amount of $50,000, secured by a mortgage running to the plaintiff Trust Company, as trustee; that such a mortgage was made, describing the bonds to be secured, and was duly recorded on August 14, 1895; that the bonds were pledged from time to time thereafter to different parties, as security for loans made to the company, the last of the bonds being pledged July 1, 1896. In September and October, 1895, creditors of the company attached its real estate. When the first attachment was made, money to the amount of $14,100 had been advanced upon the security of the bonds, and at the time of the second attachment, to the amount of $19,100. The creditors obtained judgments, and were about to levy upon the mortgaged property when they were temporarily enjoined. It was contended that the mortgage was void, on the ground that it was to secure future advancements; but the court held that the mortgage was valid, that it took effect at one time as to one pledge of bonds and at a later date as to another and became effective after the bonds were disposed of, that it was a prior lien upon the property to the extent of the money advanced upon the bonds before the attachments, and that as to the sums thereafter advanced the attachments took precedence.

It would seem that if the argument advanced in *Stearns* v. *Bennett, supra*, had been applied in this decision, such a result would not have been reached; for it was discretionary with the Gas and Electric Company, the mortgagor, after it had pledged the first block of bonds as to which the mortgage had taken effect as a security, to say whether it would pledge the balance of the bonds to secure additional loans, and if so, when and in what amounts. But the court reasoned that as, since the decision in *Richards* v. *Railroad*, large amounts of property had been invested in reliance thereon, the interpretation put upon the statute in that case should be followed, even though its correctness might be questioned.

The facts in this case do not differ in their essentials from those in *Internat'l Trust Co.* v. *Company;* and as the plaintiff's mortgage was duly recorded, and he had advanced sums amounting to $1,000 prior to Whitcher's mortgage to the defendant Durgin, it takes precedence of that mortgage to that extent. The last advancement of $1,000 being subsequent to the Durgin mortgage, but prior to the one given to Jewell, the plaintiff's mortgage as security for this advancement is subsequent to the Durgin mortgage, but prior to the one given to Jewell.

The plaintiff is entitled to a decree. If the one made was not

in accord with the foregoing, it should be modified in conformity thereto.

*Case discharged.*

CHASE, WALKER, and YOUNG, JJ., did not sit: PARSONS, C. J., concurred.